# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

JESSICA ALCALA,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No.  2:19-CV-1579-KJM-DMC

FINDINGS AND RECOMMENDATIONS

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the Court are the parties' briefs on the merits, ECF Nos. 16 and 18.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

1

1  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

2  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

3  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

4  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

5  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

6  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

7  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

8  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

9  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

10  Cir. 1988).

11        For the reasons discussed below, the Court recommends the matter be remanded

12  for further proceedings.

13

14  ## I.  THE DISABILITY EVALUATION PROCESS

15        To achieve uniformity of decisions, the Commissioner employs a five-step

16  sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R.

17  §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

18
19
|  |  |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |
| Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |

2

| | | |
|---|---|---|
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).  The claimant has the initial burden of proving the existence of a disability.  See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work.  See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

3

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on March 26, 2008, and October 27, 2008.  See CAR 199-2123.[1]  In the applications, plaintiff claims disability began on October 19, 2001.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on May 20, 2010.  See id. at 71-101.  In a September 3, 2010, decision, an Administrative Law Judge (ALJ) concluded that Plaintiff is not disabled.  See id. at 45-53.  The Appeals Council declined review and Plaintiff brought an action for judicial review in this Court.  See id. at 4-10.  On August 20, 2014, this Court issued a decision remanding the matter to the agency for further administrative proceedings.  See id. at 843-57.

Following remand, the Appeals Counsel directed that a new hearing be held.  See id. at 860-62.  On September 19, 2016, an ALJ issued a second decision finding Plaintiff not disabled.  See id. at 884-900.  The Appeals Council granted Plaintiff's request for review and the matter was remanded again for a new hearing and decision.  See id. at 911-16.  A hearing was held on January 5, 2018, before Administrative Law Judge (ALJ) Vincent A. Misenti.  In a December 5, 2018, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

> 1.  The claimant has the following severe impairment(s): lumbar degenerative disc disease, right shoulder strain since 2008, fibromyalgia, and depression since 2008;
>
> 2.  The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3.  The claimant has the following residual functional capacity:  the claimant can perform light work; she can lift and carry 10 pounds frequently and 20 pounds occasionally; she can sit, stand, and walk six hours each during a normal eight-hour workday; the claimant can never climb ladders, ropes, or scaffolds, but can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; she can occasionally reach overhead with her right upper extremity, frequently in all other directions; she can frequently but not constantly finger and handle with the right upper extremity; the left upper extremity is unlimited; the claimant cannot work at

---

[1]     Citations are the to the Certified Administrative Record (CAR) lodged on January 6, 2020, ECF No. 11.

unprotected heights and must avoid concentrated exposure to moving mechanical parts; the claimant is limited to simple, repetitive tasks equivalent to unskilled work at the SVP 2 level, with occasional public contact;

4.      Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant is capable of performing her past relevant work and there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See CAR 704-21.

After the Appeals Council declined further review on June 5, 2019, this appeal followed.

### III.  DISCUSSION

In her brief, Plaintiff argues: (1) the ALJ improperly rejected the opinions of Dr. Calvin Pon; (2) the ALJ improperly rejected Plaintiff's statements and testimony as not credible; (3) the ALJ failed to consider lay witness evidence; and (4) the ALJ's vocational findings are not supported by substantial evidence.

#### A.      **Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social

workers are not considered an acceptable medical source.  <u>See</u> <u>Turner v. Comm'r of Soc. Sec. Admin.</u>, 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  <u>See</u> <u>Dale v. Colvin</u>, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  <u>See</u> <u>Popa v. Berryhill</u>, 872 F.3d 901, 906 (9th Cir. 2017), <u>but see</u> <u>Revels v. Berryhill</u>, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  <u>See</u> <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  <u>See id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996); <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  <u>See</u> <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  <u>See</u> <u>Lester</u>, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995).

/ / /

/ / /

/ / /

1        A contradicted opinion of a treating or examining professional may be rejected

2   only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d

3   at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the

4   facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

5   finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

6   legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

7   professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

8   without other evidence, is insufficient to reject the opinion of a treating or examining

9   professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

10  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

11  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

12  also Magallanes, 881 F.2d at 751.

13       At Step 4, the ALJ discussed the opinions of consultative examining physician, Dr.

14  Calvin Pon.  See CAR 714-16.  As to Dr. Pon, the ALJ stated:

15       In May 2008, at the request of the State agency, orthopedic consultative
         examiner Calvin Pon, M.D., examined the claimant [Exhibit 12F]. He
16       reported that he reviewed medical records.  The claimant reported right
         shoulder pain, right scapular pain, right hand numbness, and low back
17       pain.  She said that she could sit for 30 minutes, stand for 40 minutes,
         walk for 20 minutes, and was able to walk up and down stairs.  She
18       reported that she was independent for self-care, could cook, grocery shop,
         and drive, but did no other household chores.  On examination, Dr. Pon
19       observed that she had a normal gait, sat comfortably, could rise and stand
         normally, could squat approximately one-third and come up normally, and
20       was able to get on and off the examination table normally.  After
         completing the examination, Dr. Pon concluded that the claimant could
21       stand and/or walk for 4-6 hours and sit for six hours in an eight-hour
         workday and occasionally climb ladders, crawl, stoop, crouch, kneel, and
22       squat.  The claimant could occasionally to frequently climb stairs.  She
         could frequently push and pull with the right upper extremity and perform
23       gross and fine manipulative tasks.  The left upper extremity was unlimited,
         but the claimant could only occasionally reach with the right upper
24       extremity [Exhibit 12F].  The undersigned generally accepts Dr. Pon's
         assessment of the claimant's functional capability, but does not find
25       adequate support for his suggested limitation to occasional reaching in all
         directions with the right upper extremity.  Dr. Pon vaguely described
26       "right shoulder pain" in the narrative report, possible bursitis and possible
         rotator cuff tendinitis.  However, his physical examination showed that the
27       claimant had full range of motion in the right shoulder and normal
         neurological testing [Exhibit 12F].  Other medical reports showed
28       diagnosis of right shoulder strain [Exhibit 15F], and there were normal

1
2
3

>imaging studies and normal strength found in the upper extremities [Exhibit 20F, 21F].  Subsequent examinations noted mostly normal shoulder range of motion and strength [Exhibit 36F, 43F, 4F].  The claimant has never required right shoulder surgery, or received injections, and has had scant medical care for this problem.

4

>CAR 714-15.

5   The ALJ then discussed the objective medical evidence between 2008 and 2017, noting that

6   Plaintiff underwent back surgery in 2017.  See id. at 714-15.  The ALJ added:

7
8
9
10
11
12

>Thus based on the objective evidence, there may have been slight worsening from 2001 to 2008, and continuing to the present, requiring surgery in 2017, as shown on the MRI scans, resulting in the residual functional capacity determined by Dr. Pon, limiting the claimant to a range of light work, but not accepting his limitation to occasional reaching in all directions, but rather only occasionally overhead reaching, which is slightly more restrictive than found by the worker's compensation-related evaluators.  The objective evidence thereafter indicates no worsening, strongly suggesting that the claimant remained capable of at least light exertional work.

13

>Id. at 715.

14   Finally, the ALJ stated:

15
16
17

>The undersigned gives the greatest weight to CE Dr. Pon's opinion.  After reviewing the updated MRI scan in March 2009, the State agency reviewers at the reconsideration level also adopted Dr. Pon's opinion [Exhibit 24F3].

18

>Id.

19   Plaintiff contends:

20
21
22
23
24
25
26
27

>Here, Dr. Calvin Pon examined Alcala on 5/23/08. Dr. Pon noted Alcala had experienced right shoulder pain since October 2001 when she was injured in her housekeeping job. She also had low back pain because of the work injury. (Tr. 527.) Dr. Pon noted Alcala had decreased sensation in the right hand. (Tr. 528.) She has a positive straight leg raise test and decreased sensation in the right foot. Dr. Pon opined Alcala could stand and/or walk for 4 to 6 hours in an 8-hour day and sit for 6 hours. She was limited to occasional stooping, crouching, kneeling, squatting, and climbing. She had no restriction in pushing/pulling with the left arm but was limited to frequent pushing/pulling with the right. She was limited to frequent bilateral use of foot controls. She could lift and carry 10 pounds frequently and 20 pounds occasionally. She was limited to occasional reaching with the right shoulder and frequent handling and fingering with the right hand. (Tr. 529.)

28   / / /

8

As an initial matter, Dr. Pon's opinion regarding Alcala's limited ability to reach and the first ALJ's failure to provide legally adequate reasons for rejecting that opinion was the primary reason for this Court's remand Order on 8/20/14. (Tr. 843-57.) The second ALJ's failure to adequately address this issue was one of the main reasons for the Appeals Council remand order on 9/18/17. (Tr. 911-16.) ALJ Misenti is the third ALJ given an opportunity to address this issue. The vocational expert testified at the third hearing before ALJ Misenti that in combination with the other restrictions which eventually were adopted as the RFC finding, a limitation to occasional reaching in all directions, as Dr. Pon assessed, would eliminate the ability to perform competitive employment. (Tr. 760-61.)

In the current decision, by the third ALJ decision in this matter, the ALJ purported to assign the greatest weight to Dr. Pon's opinion (Tr. 716), but made these assertions regarding the limitation to occasional reaching in all directions:

> The undersigned generally accepts Dr. Pon's assessment of the claimant's functional capability, but does not find adequate support for his suggested limitation to occasional reaching in all directions with the right upper extremity. Dr. Pon vaguely described 'right shoulder pain" in the narrative report, possible bursitis and possible rotator cuff tendinitis. However, his physical examination showed that the claimant had full range of motion in the right shoulder and normal neurological testing [Exhibit 12F]. Other medical reports showed diagnosis of right shoulder strain [Exhibit 15F], and there were normal imaging studies and normal strength found in the upper extremities [Exhibit 20F, 21F]. Subsequent examinations noted mostly normal shoulder range of motion and strength [Exhibit 36F, 43F, 4F]. the claimant has never required right shoulder surgery, or received injections, and has had scant medical care for this problem.

(Tr. 714.)

The ALJ's above assertions are inconsistent with the ALJ's own finding, at step two, that Alcala's right shoulder strain is a medically determinable, severe impairment. (Tr. 709.) The ALJ has not explained why the RFC finding includes a limitation to occasional overhead reaching, consistent with a severe shoulder impairment, but allows for frequent reaching in all other directions. The ALJ's above findings appear to dispute the existence of a severe shoulder impairment in the first place, and do not explain why the shoulder impairment, which the ALJ himself found to be severe, would cause limitations in reaching overhead but not in any other direction. Alcala submits that the only reason the ALJ did not include the limitation to occasional reaching in all directions in the RFC finding, despite giving the greatest weight overall to Dr. Pon's opinion, was that the VE testimony established that including this limitation would eliminate the ability to perform all the jobs identified at step four and step five and all other jobs. (Tr. 760-61.) Had this limitation been included in the RFC, the ALJ would have been forced to find that Alcala is disabled. Alcala submits that the ALJ's recitation of the examination notes is not a legally adequate explanation for his rejection of this critical aspect of Dr.

> Pon's opinion. It does not rise to the level of clear and convincing or even specific and legitimate. It might be specific, but it is not legitimate.

> ECF No. 16, pgs. 13-15.

The Court is troubled by the ALJ's analysis of Dr. Pon's opinions regarding Plaintiff's right shoulder limitations.  Specifically, the analysis is inconsistent.  At one point, the ALJ states that Dr. Pon's opinions are generally accepted.  The ALJ, however, only accepted a portion of Dr. Pon's opinion – accepting a limitation to overhead reaching with the right extremity, while concurrently rejecting the doctor's conclusion that Plaintiff's impairment also limited Plaintiff's ability to reach in all directions with the right extremity.  While the ALJ cited other evidence showing full range of motion in the right shoulder and normal neurological testing, such evidence would seem to apply to both overhead reaching as well as reaching in all directions.  The ALJ does not explain why this other objective evidence supports only the doctor's opinion as to overhead reaching and not the doctor's opinion as to reaching in all other directions.

The ALJ does not explain how the objective observations made by Dr. Pon and other doctors support one opinion but not the other.  This omission suggests to the Court that the ALJ elected to reject those portions of Dr. Pon's opinion that, if accepted, would have resulted in a finding that Plaintiff is disabled.  The matter should be remanded to allow the agency to reconsider Dr. Pon's opinions and provide a rationale explaining why the objective evidence supports only the limitation as to overhead reaching.

**B.**   **Credibility**

The Commissioner determines whether a disability applicant is credible, and the Court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

/ / /

11

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").   Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant alleges disability primarily due to an injury to her cervical and lumbar spine, and a right shoulder injury.  She alleges that she cannot sit, stand, or walk for any significant amount of time, and requires a walker for ambulation.  She lives with her family members and has stated she depends on them to help with day to day activities.  The claimant has alleged pain due to fibromyalgia, in addition to pain in her neck, lower back, and pain extending down her left lower extremity.  She has migraine headaches several times a week, and cannot lift more than about five pounds.

CAR 712.

///

///

///

12

1    Regarding Plaintiff's pain complaints, the ALJ stated:

2          As for the claimant's statements about the intensity, persistence, and
           limiting effects of his or her symptoms, they are inconsistent because the
3          medical evidence does not support the severity, intensity, or frequency of
           pain and other symptoms as alleged. . . .

4                                              *  *  *

5          The undersigned find[s] that the claimant's pain complaints are not
6          consistent with the medical evidence for several reasons.  First, when she
           was injured in 2001, Dr. Fontaine observed that her behavior and the
7          objective evidence was not consistent with her complaints, suggesting
           exaggeration in order to qualify for worker's compensation benefits.  This
8          observation also was made independently by Dr. Ansel.  In addition, her
           own treating doctor, and the other evaluators, found her capable of work at
9          least consistent with light work (lifting 30 pounds) with no restrictions on
           sitting, standing, and walking.  Further, Agreed Medical Examiner Dr.
10         Baker similarly limited her to no heavy lifting, thus clearing her for at
           least the level of exertional work described in the residual functional
11         capacity found here.  Moreover, the claimant sought no medical care from
           2003 until 2008, strongly indicating that she was not limited physically
12         during this time.  Beginning in 2008, the claimant again reported severe
           back and neck pain, along with new shoulder pain.  However, her
13         complaints are not supported by objective medical evidence.  Instead, the
           series of MRI scans documents no worsening in her neck and back, as they
14         are termed -stable-.  An x-ray of the right shoulder in December 2008
           revealed normal pathology.

15                                             *  *  *

16         Other factors also suggest that the claimant's complaints are out of
17         proportion to the medical evidence.  At the hearing, she minimized her
           daily activities, contrary to having two small children and presumably
18         caring for them during this time.  She is able to drive her daughter to
           school four days a week, makes at least simple meals daily, and is able to
19         cook for at least 30 minutes at a time [Exhibit 46F14-17].  She told Dr.
           Aulakh that she could do light chores, errands, and cook [Exhibit 33F].
20         She told her physical therapist in June and July 2015 that she had a "busy
           week and was unable to get much rest," she "was not able to complete her
21         home exercise program over the last two days because she's been busy"
           and that she had "increased pain carrying her new born grandson the past
22         week."  [Exhibit 45F2, 5, 14, 17].  Her reported level of activity suggests
           greater functional ability than she alleged.  The claimant has been
23         prescribed opioids and other strong pain medications, which suggest that
           her pain complaints were taken seriously by her doctors, with some side
24         effects including daytime drowsiness.  But the medical evidence does not
           contain the type of findings that would mandate the level of medication
25         she received, so her doctors must have been responding to her subjective
           complaints to prescribe these medications.

26         Id. at 712, 716-17.

27

28
                                               13

Plaintiff argues:

> Here, Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and the ALJ made no finding of malingering based on affirmative evidence thereof, nor does the record support such a finding. Accordingly, at the second step of the analysis, the ALJ was required to make specific, clear, and convincing findings to support his rejection of Plaintiff's testimony. Here, the ALJ asserted the objective evidence was not consistent with the limitations Alcala described. The ALJ asserted Alcala was able to perform activities of daily living, such as caring for her children, and asserted she received primarily conservative and routine treatment for her impairments. (Tr. 712, 716-17.)
>
> Alcala submits that contrary to the ALJ's assertions, her ability to perform the above listed activities of daily living is not inconsistent with her testimony about how her impairments affect her ability to function. She explained that her family does most of the household chores and that her mother and adult daughter help her with the childcare. She can drive her children to school, which takes approximately 10 minutes each day, and most of the rest of the day is spent lying down. (Tr. 741-56.) There is no evidence that any of Alcala's activities take more than a couple of hours each day. The Social Security Act does not require that disability claimants be totally unable to engage in any form of mental or physical activity. *Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989). In *Garrison*, *supra*, the Ninth Circuit noted:
>
> > The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons..., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.
>
> *Garrison* at 1016, citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).
>
> The issue here is whether Alcala can sustain activity for a full workday and work week. The record establishes that she cannot. The activities the ALJ cited are not inconsistent with Alcala' testimony she cannot sit for more than about an hour or walk for more than about 45 minutes at a time, needs help with bathing and dressing, cannot lift more than 5 pounds, and has great difficulty using her hands for lifting or holding any object without dropping and breaking or spilling it. Alcala explained she cannot even stir food on the stove or wash a dish without aggravating the pain in her right shoulder. (Tr. 786.)

/ / /

/ / /

/ / /

/ / /

1    The ALJ cited the objective medical evidence, generally, as being
2    inconsistent with Plaintiff's alleged limitations, but identified no particular findings which contradicted any of the specific functional deficits Alcala described. In *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), the
3    Ninth Circuit addressed a similar issue:

4    We hold that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by
5    simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure
6    that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not
7    rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and
8    convincing reasons, supported by evidence in the record, to support that credibility determination. Here, the ALJ found
9    generally that the claimant's testimony was not credible, but failed to identify which testimony she found not
10   credible and why. We conclude, therefore, that the ALJ committed legal error. This error was not harmless because
11   it precludes us from conducting a meaningful review of the ALJ's reasoning.
12
13   Here, the ALJ has not specified which testimony she found not credible and has not provided clear and convincing reasons supported by
14   evidence in the record to support the determination. The ALJ primarily cited the opinions of the doctors who examined Alcala in conjunction with
15   her Workers Compensation claim supporting the ALJ's assertion that Alcala could have gone back to work after her injury. (Tr. 714.) This was
16   improper because, first, these doctors examined Alcala to determine financial responsibility for her ongoing care. They had an obvious motive
17   to find she was not limited and could return to work so the insurance company for whom the doctors worked could stop paying for Alcala's
18   care. And the ALJ ultimately gave the greatest weight to the opinion of Dr. Pon (Tr. 716), and that opinion confirms Alcala's testimony regarding
19   her difficulty using her right shoulder for activities involving reaching. If Alcala cannot reach in any direction more than occasionally, and this is
20   properly considered in conjunction with the other limitations the ALJ assessed, then Alcala cannot perform her past work or any other work and
     is disabled.
21
     ECF No. 16, pgs. 16-18.
22
23   Here, the ALJ rejected Plaintiff's statements and testimony as not credible for two

24   reasons – they were not consistent with the objective evidence and they were not consistent with

25   Plaintiff's daily activities.  The Court finds the ALJ's reliance on Plaintiff's daily activities is

26   misplaced.  While the ALJ notes that Plaintiff states she is able to drive her daughter to school

27   four days a week, make simple meals, do light chores, the ALJ has not explained how these

28   limited activities translate to an ability to engage in competitive work activities.  Moreover,

1   Plaintiff's statements that she had been "busy" from time to time does not necessarily indicate an

2   ability to engage in full-time competitive work given that "busy" is not defined, either by

3   Plaintiff, the doctors to whom Plaintiff made the statements, or the ALJ.  Finally, as the ALJ

4   noted, Plaintiff's doctors have taken Plaintiff's pain complaints seriously as indicated by

5   prescriptions for strong pain medications.

6           To the extent the ALJ's reliance on Plaintiff's daily activities is misplaced, the

7   ALJ's citation to inconsistency with the objective evidence is insufficient on its own to support an

8   adverse credibility finding.  The matter should be remanded to the agency to allow for a new

9   credibility determination.

10          **C.      Lay Witness Evidence**

11          In determining whether a claimant is disabled, an ALJ generally must consider lay

12   witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915,

13   919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay

14   testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

15   evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100

16   F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of

17   lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.

18   When rejecting third party statements which are similar in nature to the statements of plaintiff, the

19   ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement.  See

20   Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving

21   rejection of a third-party family member's testimony, which was similar to the claimant's, for the

22   same reasons given for rejection of the claimant's complaints).

23          The Commissioner's regulations require the ALJ consider lay witness testimony in

24   certain types of cases.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); SSR 88-13.

25   That ruling requires the ALJ to consider third-party lay witness evidence where the plaintiff

26   alleges pain or other symptoms that are not shown by the medical evidence.  See id.  Thus, in

27   cases where the plaintiff alleges impairments, such as chronic fatigue or pain (which by their very

28   nature do not always produce clinical medical evidence), it is impossible for the court to conclude

16

that lay witness evidence concerning the plaintiff's abilities is necessarily controverted such that it may be properly ignored.  Therefore, in these types of cases, the ALJ is required by the regulations and case law to consider lay witness evidence.

Plaintiff asserts:

> Here, Alcala's husband, Harvey Alcala, completed a questionnaire describing Alcala's limitations. He noted Alcala spends a lot of time lying down. (Tr. 266.) She sleeps poorly at night and needs help with bathing and dressing. (Tr. 267.) She is in too much pain to do most household chores. (Tr. 268.) Alcala no longer socializes outside of her family. The witness checked lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, stair climbing, completing tasks, concentration, and using hands as abilities affected by Alcala's conditions. (Tr. 271.) He noted Alcala does not handle stress well. (Tr. 272.) Her carpal tunnel symptoms make it hard for her to hold items. (Tr. 273.)
> The ALJ did not mention the lay witness statement in the decision and gave no reasons for rejecting the limitations Mr. Alcala described. These limitations are consistent with the medical evidence and the limitations assessed by Dr. Pon, as discussed above.
> The statements of Alcala's witness establish that, during relevant times, Alcala could not perform full-time work on a regular and continuing basis. There is no reliable evidence to support the ALJ's contrary conclusion, and the ALJ's failure to base his rejection of the lay witness statement on the record and to give specific and legitimate reasons (or any reasons at all) germane to each witness is reversible error. . . .

ECF No. 16, pg. 19.

Defendant acknowledges that the ALJ must determine whether law witness evidence is or is not consistent with other evidence:

> Social Security Ruling (SSR) 06-03p requires a determination as to whether a lay witness' testimony is "consistent with other evidence," and whether "any other factors that tend to support or refute the evidence" (AR 1469). Towards this end, the ALJ identification of inconsistencies between lay witness statements and the medical evidence are valid, germane reasons to discount those statements (AR 26). *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("Inconsistency with medical evidence" is a germane reason for discounting lay witness testimony); *McTaggart v. Comm'r of Soc. Sec.*, 480 Fed.Appx. 459, 461 (9th Cir. 2012) (unpublished) (ALJ properly discounted mother's statements because they "were not fully consistent with the medical and other evidence of record").

ECF No. 18, pg. 19.

/ / /

/ / /

/ / /

1   Defendant also concedes that the ALJ erred:

> In the present case, as set forth above, the ALJ set forth a full and complete discussion of Plaintiff's assertions of disabling pain and limitations (AR 716-17). Because her husband did not set forth limitations different from Plaintiff's assertions, the ALJ's error in not specifically addressing the husband's statement was harmless, as it would not affect the outcome of the case (AR 266-278). (citation omitted).

> <u>Id.</u>

The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts.  For example, in <u>Stout v. Commissioner of Social Security</u>, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  <u>Id.</u> at 1056; <u>see also</u> <u>Robbins v. Social Security Administration</u>, 466 F.3d 880, 885 (9th Cir. 2006) (citing <u>Stout</u>, 454 F.3d at 1056).  Similarly, in <u>Batson v. Commissioner of Social Security</u>, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's testimony.  Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied, there was substantial evidence supporting the ALJ's decision.  Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.

> <u>Id.</u> at 1197 (citing <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1131 (9th Cir. 1990)).

In <u>Curry</u>, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education.  The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion.  <u>See</u> <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

/ / /

/ / /

/ / /

18

1    The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d

2  1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility.  Citing Batson, the court

3  stated:  "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility

4  finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless

5  error."  See id. at 1162.  The court articulated the difference between harmless error standards set

6  forth in Stout and Batson as follows:

> . . . [T]he relevant inquiry [under the Batson standard] is not whether the
> ALJ would have made a different decision absent any error. . . it is whether
> the ALJ's decision remains legally valid, despite such error.  In Batson, we
> concluded that the ALJ erred in relying on one of several reasons in
> support of an adverse credibility determination, but that such error did not
> affect the ALJ's decision, and therefore was harmless, because the ALJ's
> remaining reasons *and ultimate credibility determination* were adequately
> supported by substantial evidence in the record.  We never considered what
> the ALJ would do if directed to reassess credibility on remand – we
> focused on whether the error impacted the *validity* of the ALJ's decision.
> Likewise, in Stout, after surveying our precedent applying harmless error
> on social security cases, we concluded that "in each case, the ALJ's error . .
> . was inconsequential to the *ultimate nondisability determination*."
>
> Our specific holding in Stout does require the court to consider whether the
> ALJ would have made a different decision, but significantly, in that case
> the ALJ failed to provide *any reasons* for rejecting the evidence at issue.
> There was simply nothing in the record for the court to review to determine
> whether the ALJ's decision was adequately supported.
>
> Carmickle, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

Thus, where the ALJ's errs in not providing any reasons supporting a particular

determination (i.e., by failing to consider lay witness testimony), the Stout standard applies and

the error is harmless if no reasonable ALJ could have reached a different conclusion had the error

not occurred.  Otherwise, where the ALJ provides analysis but some part of that analysis is

flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either

legally insufficient or unsupported by the record), the Batson standard applies and any error is

harmless if it is inconsequential to the ultimate decision because the ALJ's disability

determination nonetheless remains valid.

/ / /

/ / /

/ / /

In this case, the Court does not find that the ALJ's error in failing to consider lay witness evidence offered by Plaintiff's husband is harmless under the <u>Stout</u> test.  As stated above, the regulations <u>require</u> the ALJ to consider lay witness evidence in cases such as this where the claimant alleges pain not shown by objective medical evidence.  <u>See</u> <u>Smolen</u>, 80 F.3d at 1288; <u>see also</u> SSR 88-13.  Given this requirement, the Court cannot say that no reasonable ALJ could have reached a different conclusion had Mr. Alcala's testimony been considered.  It is entirely possible that a reasonable ALJ, upon consideration of Mr. Alcala's testimony, may have found it credible and supportive of Plaintiff's own allegations.

The matter should be remanded to the agency to allow for consideration of Mr. Alcala's testimony and, if rejected, a statement of reasons for doing so.

### D.   <u>Vocational Findings</u>

The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity.  The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity.  <u>See</u> <u>Heckler v. Campbell,</u> 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations.  <u>See</u> <u>Jones v. Heckler,</u> 760 F.2d 993, 998 (9th Cir. 1985); <u>see also</u> <u>Heckler v. Campbell,</u> 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[2]  <u>See</u> 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).

---

[2]     Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  <u>See</u> 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  <u>See</u> 20 C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  <u>See</u> 20 C.F.R. §§ 404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time

1   "If a claimant has an impairment that limits his or her ability to work without directly affecting

2   his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered

3   by the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404,

4   Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids

5   even when a claimant has combined exertional and non-exertional limitations, if non-exertional

6   limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d

7   1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

8           In cases where the Grids are not fully applicable, the ALJ may meet his burden

9   under step five of the sequential analysis by propounding to a vocational expert hypothetical

10  questions based on medical assumptions, supported by substantial evidence, that reflect all the

11  plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically,

12  where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient

13  non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See

14  Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

15          Hypothetical questions posed to a vocational expert must set out all the substantial,

16  supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881

17  F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the

18  expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary

19  value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to

20  the expert a range of hypothetical questions based on alternate interpretations of the evidence, the

21  hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by

22  substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th

23  Cir. 1988).

24  _____

25  with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§
    404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time
    with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§
26  404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100
    pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20
27  C.F.R. §§ 404.1567(e) and 416.967(e).  Non-exertional activities include mental, sensory,
    postural, manipulative, and environmental matters which do not directly affect the primary
28  strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

According to Plaintiff:

> At step four, the ALJ found Alcala's past work as a housekeeper was performed at the level of substantial gainful activity (SGA) and did qualify as past relevant work. (Tr. 718.) Alcala submits that her work as a housekeeper was a brief stint from September 2001 through October 2001, and that her earnings records show she did not earn SGA wages from this job. Most of her earnings during that time period were from a different job at a hair salon. (Tr. 226.) The ALJ acknowledges the record does not show SGA level earnings from a housekeeping job during the relevant period, but speculates that not all of Alcala's wages were reported and that she must have earned SGA wages based on her description of the job in her disability report. (Tr. 719.) Alcala submits that the ALJ's step-four finding is not supported by the record. As expressed in 20 C.F.R. § 404.1565, to be classified as past relevant work (PRW), the work must have lasted long enough for the claimant to learn to do the job, and the job must have been substantial gainful activity (SGA). Here, the record does not show Alcala's job as a housekeeper was ever SGA, thus it cannot be PRW and she cannot be found able to return to it as PRW.
>
> Finally, in *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988), the Ninth Circuit stated that hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant. If the vocational expert's hypothetical assumptions are incomplete or lack support in the record, the opinion based thereon has no evidentiary value. Here, the ALJ improperly omitted from the vocational hypothetical Plaintiff's credible allegations and the limitations described by the lay witness. The ALJ also improperly omitted the limitations in reaching assessed by Alcala's examining doctor. Because the VE's testimony that Plaintiff could perform the occupations identified by the ALJ was based on the ALJ's failure to accurately pose all of Plaintiff's limitations, the VE's testimony that Plaintiff can perform those occupations has no evidentiary value. The ALJ's decision is based on evidence which has no evidentiary value, and so decision is not based on substantial evidence.

ECF No. 16, pg. 20.

In opposition, Defendant only addresses Plaintiff's contention concerning the ALJ's reliance on vocational expert testimony to conclude there are other jobs Plaintiff can perform. Defendant does not address Plaintiff's argument regarding past relevant work, which is well-taken. As to past relevant work and whether such work was done at the level of substantial gainful activity, the ALJ merely speculates that "earnings from all jobs may not have been accurately reported. . . ." CAR 719. Speculation does not constitute substantial evidence.

As to other jobs, the ALJ's finding is based on flawed analyses of Dr. Pon's opinions and plaintiff's testimony, as well the ALJ's failure to consider lay witness evidence offered by Mr. Alcala.

/ / /

22

1        The matter should be remanded for new vocational findings which are based on

2   evidence, not speculation, and which properly account for Dr. Pon's opinions, Plaintiff's

3   testimony, and lay witness evidence.

4

5                               **IV.  CONCLUSION**

6        Based on the foregoing, the undersigned recommends that:

7        1.      Plaintiff's motion for summary judgment, ECF No. 16, be granted;

8        2.      Defendant's cross-motion for summary judgment, ECF No. 18, be denied;

9   and

10       3.      The Commissioner's final decision be reversed and this matter be

11  remanded for further proceedings consistent with these findings and recommendations.

12       These findings and recommendations are submitted to the United States District

13  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

14  after being served with these findings and recommendations, any party may file written

15  objections with the court.  Responses to objections shall be filed within 14 days after service of

16  objections.  Failure to file objections within the specified time may waive the right to appeal.  See

17  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18

19  Dated:  February 17, 2021

20                                      _____
                                        DENNIS M. COTA
21                                      UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

                                        23