IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA ALCALA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:19-CV-1579-KJM-DMC<br><br><br><br>ORDER |

Jessica Alcala brings this action 42 U.S.C. § 405(g) for review of a decision by the Commissioner of Social Security. The Commissioner denied her benefits based on an administrative law judge's decision that she was not "disabled" under the Social Security Act. *See* Admin. Record (AR) 697–721, ECF No. 11-25. The parties have both moved for summary judgment. *See* Mot., ECF No. 16; Cross-Mot., ECF No. 18.

The motions were referred to a United States Magistrate Judge as provided by Eastern District of California local rules, and the Magistrate Judge filed findings and recommendations. ECF No. 28. The Magistrate Judge recommends reversing and remanding for further proceedings in light of several legal errors in the administrative law judge's reasoning, which went uncorrected in an administrate appeal. The magistrate judge's findings and recommendations permitted objections within fourteen days, *see id*. at 23, but no party objected. The court thus

1    presumes any findings of fact are correct. *See Orand v. United States*, 602 F.2d 207, 208 (9th
2    Cir. 1979). The magistrate judge's conclusions of law are reviewed de novo. *See Robbins v.*
3    *Carey*, 481 F.3d 1143, 1147 (9th Cir. 2007) ("[D]eterminations of law by the magistrate judge are
4    reviewed de novo by both the district court and [the appellate] court . . . .").

5          The magistrate judge correctly found the administrative law judge made legal errors. This
6    court adopts the Magistrate Judge's findings and recommendations on all but one point, as
7    explained below. This order also addresses Alcala's request for remand with instructions to
8    award benefits, *see* Mot. at 16, which the Magistrate Judge did not consider, *see* F&Rs at 23.

9          The court beings with the legal standard a district court follows when determining what
10   remedy is appropriate in cases filed under 42 U.S.C. § 405(g). "Usually, 'if additional
11   proceedings can remedy defects in the original administrative proceeding, a social security case
12   should be remanded.'" *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (alterations
13   omitted) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). A district court may
14   also remand with instructions to calculate and award benefits. *Id.* A remand to award benefits is
15   appropriate only if "certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th
16   Cir. 2015). The court must first determine that the administrative law judge made a legal error,
17   "such as failing to provide legally sufficient reasons for rejecting evidence." *Id.* Second, if the
18   court finds such an error, it must "review the record as a whole" and determine whether the
19   record is "fully developed" and "free from conflicts and ambiguities." *Id.* "[A]ll essential factual
20   issues" must have been resolved. *Treichler v. Comm'r of Soc., Sec. Admin.*, 775 F.3d 1090, 1099
21   (9th Cir. 2014). The court must consider, for example, "whether there are 'inconsistencies
22   between [the claimant's] testimony and the medical evidence in the record.'" *Dominguez*, 808
23   F.3d at 407 (alterations in original) (quoting *Treichler*, 775 F.3d at 1105). Third, if this review
24   shows "the record has been fully developed" and no issues are outstanding, the court must then
25   decide whether the administrative law judge "would be required to find the claimant disabled on
26   remand," assuming the administrative law judge would credit whatever evidence had previously
27   been wrongly discredited. *Id.* (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)).
28   Fourth, if so, the district court may remand with instructions to award benefits. *Id.*

Here, first, for the reasons in the magistrate judge's findings and recommendations, the administrative law judge made several legal errors: (1) inconsistently rejecting and accepting the opinions of Alcala's examining physician without clear, convincing, specific, and legitimate reasons that any of those opinions were wrong, *see* F&Rs at 7–10; (2) disbelieving Alcala's testimony without finding she was malingering and without specific, clear, and convincing reasons, *see id.* at 12–16; (3) disregarding testimony from Alcala's husband, a lay witness, without any explanation at all, *see id.* at 17–20; (4) finding Alcala could have returned to a housekeeping job, *see id.* at 22; and (5) relying on the opinion of a vocational expert that was based on incomplete and incorrect information, *see id.* These legal errors satisfy the first part of the test for remand without a further hearing.

Before moving to the second step, the court resolves an ambiguity in the findings and recommendations. One of the five errors listed above was already corrected: as the administrative appeals judge explained, the record does not support the administrative law judge's finding that Alcala had "past relevant work" as a housekeeper under 20 C.F.R. sections 404.1520(a)(4)(iv) and 404.1520(e). *See* AR 698. Her income from that work was uncertain and too low to qualify as "substantial gainful activity" under the relevant regulation. *See id.* The Commissioner does not ask to revisit that conclusion now. *See* Cross-Mot. at 16. It was therefore unnecessary for the Magistrate Judge to decide whether the administrative law judge was wrong to find Alcala could again work as a housekeeper, *see* F&Rs at 22; it is agreed this was an error.

Returning then to remedies, the second question is whether the record is fully developed. *Dominguez*, 808 F.3d at 407. It is, as explained below. Here, all agree how the first four steps of the relevant five-step regulatory scheme must be resolved:

(1) Alcala has not "engaged in substantial gainful activity" since the onset date of her condition, AR 709, ECF No. 11-25;

(2) She has severe impairments (lumbar degenerative disc disease, right shoulder strain, fibromyalgia, and depression) that "significantly limit" her "ability to perform basic work activities," *id.* at 709–10;

3

1      (3)   She does not have an impairment or combination of impairments that "meets or
2            medically equals the severity" of the impairments listed in the relevant regulations,
3            *id.* at 710–11; and
4      (4)   The evidence does not permit finding she could return to a job that qualifies as
5            "substantial gainful work," *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e); AR
6            698.

7  The parties disagree at the fifth step only: whether Alcala could work in another job despite her

8  impairments. *See* Mot. at 15; Cross-Mot. at 16; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v),

9  404.1520(g). If she could, as the administrative law judge found, then she would not be

10 "disabled" and would not be entitled to Social Security benefits. If she could not, she would be

11 disabled and would be entitled to benefits under the Commissioner's regulations.

12       Within that fifth step, the question is narrower still. A bit more background about the

13 administrative law judge's decision is necessary to explain why. The judge found Alcala had the

14 following "residual functional capacity"; that is, despite her impairments, she could perform work

15 if it did not require certain tasks:

16       [T]he claimant has the residual functional capacity to perform light
         work as defined in 20 CFR 404.1567(b) and 416.967(b) in that she
17       can lift and carry 10 pounds frequently and 20 pounds occasionally,
         and sit, stand, and walk six hours each during a normal eight-hour
18       workday.

19       The claimant can never climb ladders, ropes, or scaffolds, but can
         occasionally climb stairs and ramps, balance, stoop, kneel, crouch,
20       and crawl.

21       She can occasionally reach overhead with her right upper extremity
         [her dominant hand] frequently in all other directions and frequently
22       but not constantly finger and handle with the right upper extremity.

23       The left upper extremity is unlimited.

24       She cannot work at unprotected heights and avoid concentrated
         exposure to moving mechanical parts.
25
         The claimant is limited to simple, repetitive tasks equivalent to
26       unskilled work at the SVP 2 level, with occasional public contact.

27 AR 711 (line breaks inserted for clarity).

28

The administrative law judge then asked a vocational expert what positions a hypothetical worker with these limitations could fill. *See* AR 758–59. The vocational expert identified three jobs: office helper, mailroom clerk, and laundry classifier. *See id.* at 759–60. Then came the distinction that sets up the parties' one remaining dispute. The administrative law judge asked the vocational expert to change one assumption: consider instead a worker who could reach with her dominant arm and hand only occasionally (not frequently, as she had assumed before), no matter the direction. *See id.* at 760. The vocational expert testified no work would be available. *See id.* at 761.

So in sum, if it is true, as the administrative law judge found, that Alcala *can* work in a job that requires frequent reaching with her dominant arm and hand (but only occasional overhead reaching), then the Commissioner would conclude she can work and is not "disabled" under the Social Security Act. But if she cannot use her dominant hand and arm to reach frequently in any direction, but rather only occasionally, then the Commissioner would conclude no jobs are available for her, and she would be "disabled" and entitled to benefits.

On this narrow point, the record is fully developed, and there is no reason to remand for further investigation. According to the uncontradicted testimony of Dr. Calvin Pon—a physician who examined Alcala and whose opinion the administrative law judge gave "the greatest weight," AR 716—Alcala had chronic pain in her right shoulder, possibly attributable to bursitis or rotator cuff tendinitis. AR 529, ECF No. 11-14. She also had right scapular pain, which was most likely the result of pain radiating from her right shoulder. *Id.* Dr. Pon believed she could push and pull frequently with her right arm despite her pain, but he wrote that "[r]eaching with her right shoulder should be limited to occasionally," no matter the direction. *Id.* Alcala corroborated that opinion, as did her husband. She testified that she was severely limited in her ability to use her right arm and hand. For example, she said that she could not cook, stir, or wash dishes. AR 786. She said her right arm is "weak" and prone to spasms and swelling. AR 747. Her husband, who lives with her and cares for her, *see* AR 266, ECF No. 11-11, confirmed that her pain limits her ability to dress herself, reach, and do most household chores, among other things, *see* AR 266–71.

The inconsistencies and ambiguities the administrative law judge claimed to have found are no reason to conclude further investigation is necessary.

As for Dr. Pon, the administrative law judge already gave his opinions "the greatest weight," and he adopted Dr. Pon's opinions in every other respect. AR 714, 716. The judge relied on essentially three reasons to reject Dr. Pon's opinions about reaching. None reveals inconsistencies or ambiguities. First, the administrative law judge emphasized Alcala had not required surgery, injections, or extensive medical care. *See* AR 714. This was incorrect. Alcala had received medical care, including injections, for her shoulder pain, *see* AR 698, and she explained that she had sometimes decided not to seek medical care because she was homeless, AR 753. Second, the administrative law judge emphasized Dr. Pon's observation that Alcala had "full range of motion" and normal strength in her shoulder and could push and pull. *See* AR 714; *see also* AR 698 (administrative appellate judge emphasizing pushing and pulling). At the risk of stating the obvious, pushing and pulling with an arm and a hand is not the same as rotating a shoulder and reaching in all directions. Nor was Dr. Pon clearly wrong to conclude it would be painful for Alcala to frequently reach her right arm in all directions just because, in the exam room, she could move it in all directions and had normal strength. Finally, the administrative law judge pointed to neurological tests and other imaging studies that had come back "normal." *See* AR 714. No evidence or expert opinion justifies the implicit assumption behind that conclusion—that neurological tests and imaging studies should not appear "normal" for a person in Alcala's condition—and Dr. Pon reached his opinions despite acknowledging her condition appeared "normal" in some respects. *See* AR 528–29.

Nor are there are any relevant uncertainties in Alcala's testimony. The administrative law judge rejected her testimony finding she was not credible, but this was error, as explained in the Magistrate Judge's findings and recommendations. *See* F&Rs at 15–16; *see also Vasquez v. Astrue*, 572 F.3d 586, 591–92 (9th Cir. 2009). And there is no reason to investigate Alcala's credibility further. The administrative law judge discussed her medical history extensively, and that evidence does not cast doubt on her claims that she has difficulty reaching with her right arm. *See, e.g.*, AR 716–17. The record also includes ample evidence about Alcala's ability—or rather,

6

1 her inability—to do chores and work in her home, which does not undermine her claims of a
2 disability. *See, e.g.*, *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017).

3       The testimony from Alcala's husband also creates no uncertainties that require further
4 investigation on remand. No party has suggested any doubts about what he said or meant, and it
5 is clear that his observations are relevant. "[L]ay testimony as to a claimant's symptoms or how
6 an impairment affects ability to work is competent evidence . . . ." *Stout v. Comm'r, Soc. Sec.*
7 *Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467
8 (9th Cir. 1996)). At a minimum, his observations corroborate Alcala's testimony.

9       This case's decades-long history also weighs heavily against a remand for further
10 hearings, testimony, investigations, and opinions. This matter has been remanded for further
11 administrative proceedings twice before, once by this court and once by the Appeals Council. *See*
12 F&Rs at 4–5; Mot. at 2. Dr. Pon's opinions were also the subject of both previous remands. *See*
13 AR 853–55, 913–14. If this matter were remanded again for further consideration, it would be
14 the fourth time an administrative law judge has considered the case. *See* F&Rs at 4–5; Mot. at 16.
15 Thirteen years have passed since Alcala first applied for social security benefits, and almost
16 twenty years have passed since her disability began. *See* F&Rs at 4.

17       The court thus moves to the third step of the remedies analysis: whether the administrative
18 law judge "would be required to find the claimant disabled on remand," assuming the
19 administrative law judge credited whatever evidence had previously been discredited in error.
20 *Dominguez*, 808 F.3d at 407 (quoting *Burrell*, 775 F.3d at 1141). The vocational expert's
21 testimony shows the answer is yes. If the administrative law judge had correctly credited Dr.
22 Pon's opinions, had not rejected Alcala's testimony, and had properly considered her husband's
23 description of limitations in her ability to reach, then the vocational expert would have testified
24 that no jobs are available, and the Commissioner would have found that Alcala is disabled and
25 entitled to benefits.

26       The court therefore exercises its discretion at the fourth step to reverse and remand with
27 instructions to calculate and award benefits. More specifically:

28       Alcala's motion for summary judgment, ECF No. 16, is **granted**;

1     The Commissioner's cross-motion for summary judgment, ECF No. 18, is **denied**;

2     The Commissioner's decision is **reversed**; and

3     This matter is **remanded** for the calculation and award of benefits.

4     IT IS SO ORDERED.

5 DATED: April 2, 2021.

                                              CHIEF UNITED STATES DISTRICT JUDGE